### In re HEYMAN.

(District Court, E. D. Pennsylvania. May 26, 1914.)

No. 4436.

BANKRUPTCY (§ 226\*)—WITHHELD PROPERTY—EVIDENCE.

Evidence *held* to sustain a referee's finding that the bankrupt had withheld from the referee and concealed merchandise, consisting of different kinds of jewelry, amounting to $15,307.66, which she was bound to surrender.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 226.\*]

In Bankruptcy. In the matter of the bankruptcy proceedings of Ruth Heyman, individually and trading as the Heyman Company. On certificate of a referee to review an order requiring the bankrupt to surrender certain concealed property. Affirmed.

The findings of Edward F. Hoffman, referee, are as follows:

To the Honorable the Judges of the District Court:

This matter was heard before me on March 21, 1914. The petitioner was represented by Alfred T. Steinmetz, Esq., and J. Howard Reber, Esq., his counsel. Joseph Singer, counsel for bankrupt, though duly notified, did not appear or file brief.

Ruth Heyman, the bankrupt, up to the time of adjudication, conducted a jewelry store at No. 33 South Eighth street. She had been engaged in this business for a number of years, originally with her husband, Mr. Heyman, at No. 18 North Eighth street and afterwards at 602 Market street, and finally 33 South Eighth street. The store at 18 North Eighth street was abandoned in May, 1910, and the store at 602 Market street in the month of February, 1912. The adjudication in bankruptcy was June 4, 1912. The scheduled liabilities are $20,110.92, and scheduled assets $7,648.74.

Mr. Heyman died on August 6, 1910. It appears that some months before his death he was incapacitated from the conduct of the business by an accident which caused the loss of his leg and the business was conducted entirely by his wife, and one Samuel Katzen, who was foreman and remained as manager, conducting the business as manager for Ruth Heyman, acting under full authority from her. Mrs. Heyman lived at 4150 North Broad street, and after the death of her husband, Samuel Katzen, who had established some relationship with her, lived in the same house and subsequently married her. Katzen, though continually in Philadelphia, in some way managed to elude legal process, though every effort was made to obtain his attendance, and he could not be secured for examination.

It appears from the testimony that as early as March, 1912, Mrs. Heyman desired to obtain extensions from her creditors, and made financial representations to the banks, through her attorney, Mr. David Mandel, Jr., and also to J. Howard Reber, Esq., and Joseph Greenwald, Esq. These representations were to the effect that the value of her stock on March 1, 1912, not including fixtures, was in the amount of $32,000. The trustee claims to have

established a concealment of jewelry of the value of $19,503. Starting with the premise that on March 1, 1912, the bankrupt was chargeable with a stock of goods in amount of $32,000, he makes an allowance on this amount of the amount of stock that came into the hands of the trustee at $3,000, an allowance for stock returned by the bankrupt prior to the bankruptcy, and other further allowances itemized and set forth in the statement as follows:

| | |
|---|---:|
| Stock on hand March 1, 1912, at least............................... | $32,000 00 |
| Purchases from March 1, 1912, to June 4, 1912, both dates inclusive | 360 00 |
| Total stock and purchases..................................... | $32,360 00 |
| Stock on hand June 4, 1912, less than............................ | 3,000 00 |
| Merchandise to be accounted for................................... | $29,360 00 |

Sales between March 1, 1912, and June 4, 1912, both dates inclusive, on an average cost of..............$5,892 34
    Made up as follows:

| | |
|---|---:|
| Cash deposits in People's Trust Company............ | 4,074 25 |
| Cash deposited in Merchants' Union Trust Company.... | 3,529.09 |
| Total cash deposited between March 1, 1912, and June 4, 1912, both dates inclusive........................ | 7,603 34 |
| Deduct cash received from other sources than sales of merchandise by bankrupt.......................... | 2,200 00 |
| Net cash deposited, proceeds of sales on basis of cost, between March 1, 1912, and June 4, 1912, both dates inclusive ..:................................... | 5,403 34 |
| Amount of cash, proceeds of sales between March 1, 1912, and June 4, 1912, both dates inclusive, not deposited, based on wages paid out by bankrupt........ | 489 00 |
| Total cash received from sales on basis of cost......... | 5,892 34 |
| Loss on merchandise sold by bankrupt between March 1, 1912, and June 4, 1912, both dates inclusive (testimony on general examination, meeting of October 3, 1912, pages 13 and 14).......................... | 1,200 00 |

$7,092 34

Merchandise returned or given by bankrupt in payment of debts, between March 1, 1912, and June 4, 1912, both dates inclusive, as follows:

| | | | |
|---|---:|---:|---:|
| Philadelphia Inquirer.................. | $429 40 | | |
| L'Opinione ......................... | 207 50 | | |
| Ingersoll ........................... | 100 00 | | |
| Castiglioni ......................... | 200 00 | | |
| J. R. Wood & Sons....,............... | 372 00 | | |
| Abel Bros......................... | 250 00 | | |
| E. A. Bliss & Co..................... | 300 00 | | |
| Bennett & Sawyer.................... | 200 00 | | |
| Ehrlich ......................:.... | 100 00 | | |
| Jacobson .......................... | 40 00 | | |
| Insurance man...................... | 13 00 | | |
| Morgan Jewelry Co................... | 150 00 | | |
| Zieger ............................ | 37 00 | | |
| Finberg ........................... | 37 50 | | |
| Kant ............................. | 40 00 | | |
| Schwab ........................... | 37 50 | | |
| Miscellaneous ...................... | 250 00— | 2,763 90— | 9,856 24 |

Merchandise transferred, removed, or
    concealed by bankrupt, costing............................. $19,503 76

—showing that the result obtained was a balance of jewelry chargeable to her of the value of $19,503.76.

In support of the contention that the bankrupt should be charged with stock on hand of a value of $32,000, as of March 1, 1912, he examined before

me Mrs. Heyman, David Mandel, Jr., Joseph Greenwald, J. Howard Reber, Mary Dorian, Alfred T. Steinmetz, and John A. Abel.

On page 241 of the record Mrs. Heyman admits going to the Girard National Bank, the People's Trust Company, and the Bank of Commerce for the purpose of obtaining loans and making statements that her stock was worth approximately $30,000, and she wrote out a statement for Mr. Greenwald (pp. 362 to 365).

On May 14th J. Howard Reber testifies (page 366) Ruth Heyman called upon him and he had a personal interview with her with reference to two claims he held for collection, and that she stated to him her total liabilities were $4,600, and her total assets at cost were approximately $40,000 (page 367), and her stock was very valuable, but it could not be readily disposed of, and she gave as one item heavy gold chains to the value of over $5,000.

John Abel testified he was one of the firm of Abel Bros., dealers in jewelry in the city of New York, having been in the business for 28 years. He was in Mrs. Heyman's place in the months of February and March, and later on the 30th of May, 1912. He testified his visit in the early part of February, 1912, was for the purpose of trying to get some payment on the account due them by Mrs. Heyman; that he observed in the store what he called a very complete stock of goods, consisting of a lot of diamonds, diamond jewelry, lot of gold watches, and gold rings, worth between $30,000 and $40,000 (see record, page 404), and Mrs. Heyman stated to him that she had a poor business in December, and therefore had a large amount of stock left over. On his second visit in March he found the condition of the store about the same as to the stock of goods. When he went there on Decoration Day, the stock was practically all gone, and he saw nothing there but plated jewelry.

The only contradictory testimony is that of Mrs. Heyman, and I do not consider it entitled to any weight, as she admits herself having made false statements, and from the general character of her testimony I find it to be incredible. I therefore find as a fact that Ruth Heyman can be charged with having a stock of goods on hand in the amount of at least $30,000 on the 1st of March. I also find that she actually did carry away and conceal property. This is shown by the testimony of Mary Dorian, who was a servant in her employ, who testified that in the course of her chamber work in the house she came across a trunk which she thought was full of clothing, and on lifting up the upper contents of the trunk she came across a lot of concealed jewelry, consisting of ladies' and gentlemen's gold watches and a number of gold chains and diamonds done up in tissue paper. (See record, page 332.)

It would appear that the trustee's estimate of the stock on hand in the possession of the bankrupt as of March 1, 1912, in the amount of $32,000, is justified by the testimony; but, as in recommending an order I wish to make a liberal allowance, I prefer to take the amount of stock on hand at that date as established by the statement made by the bankrupt to the banks, to wit, $30,000; this amount being the minimum estimate of the witness Abel, from his inspection of the store in the month of March, 1912, who testified the stock on hand he estimated at a value of from $30,000 to $40,000. To the estimated value of the stock as of March 1, 1912, the trustee adds the amount of $360 for purchases made by the bankrupt after March 1st.

I find from the testimony of the bankrupt (page 309) that this charge should be allowed. This makes a balance of $30,360, against which is to be allowed deduction of diminution of the stock from that date to the date of bankruptcy, together with an allowance of the stock on hand that came into the possession of the receiver. The property that came into the hands of the receiver was scheduled by the bankrupt in amount of $6,000. After having carefully considered the testimony, I find that the credit of $3,000 allowed by the trustee appears to be liberal; but, as the amount is an approximation, I prefer to give the bankrupt the benefit of every doubt, and make the allowance $4,000.

I find that the allowance in amount of $5,892.34 for merchandise between March 1, 1912, and June 1, 1912, as set forth in the trustee's schedule of allowances, is sustained by the proof. As to merchandise returned by the bankrupt, I find the trustee is justified in estimating this amount at $2,763.90; but, as there is some uncertainty in the bankrupt's testimony as to a date

when certain items were returned to J. R. Wood & Sons, in order to make a liberal allowance, I take the estimate made in her testimony (page 281) of $4,000.

I allow for loss for merchandise returned as estimated by the trustee $1,200. I sustain the charge of $40 for a chronometer, as claimed by the trustee, which disappeared from the bankrupt's store within a few days of the failure.

### Recapitulation

| | |
|---|---|
| I charge the bankrupt with stock on hand March 1, 1912, of the value of | $30,000 00 |
| Add to this for additional purchases | 360 00 |
| One chronometer | 40 00 |
| Total | $30,400 00 |

Against this amount the following credits are allowed:

| | | |
|---|---|---|
| Stock on hand at time receiver took possession | $4000 00 | |
| Loss on merchandise returned | 1200 00 | |
| Sales between March 1, 1912, and June 4, 1912, both dates inclusive | 5892 34 | |
| Merchandise returned | 4000 00 | $15,092 34 |
| Leaving a balance in amount of | | $15,307 66 |

—which represents the value of jewelry in the possession of the bankrupt.

I therefore find she concealed gold chains in amount of $5,000, and watches, diamonds, jewelry, and rings and miscellaneous jewelry in the amount of $10,307.66.

McPherson, J., in his opinion in Re Kramer & Muchnick states: "I do not decide that an order to deliver merchandise must describe the goods minutely, but I merely hold that an order directing the delivery of 'merchandise,' without more, is not sufficient. The degree of particularity that such an order should exhibit need not be dwelt upon; probably no precise rule can be laid down that would fairly and reasonably meet every situation; all that is now decided is that an order to deliver 'merchandise' is too indefinite."

I think the testimony that I have cited as to the character of the goods concealed is sufficiently definite. I therefore, in accordance with the practice in Re Epstein, enter the following order:

And now I enter an order on the said Ruth Heyman to deliver to Alfred T. Steinmetz, trustee of her estate in bankruptcy, merchandise consisting of gold chains, watches, rings, diamonds, and a chronometer in amount of $15,307.66, to be delivered to the trustee within thirty days.

Carr, Beggs & Steinmetz and Alfred T. Steinmetz, all of Philadelphia, Pa., for trustee.

Joseph Singer, of Philadelphia, Pa., for bankrupt.

DICKINSON, District Judge. •In view of certain aspects of this case which present themselves to the court, we deem it best not to express any opinion at this time of its legal merits. There may be occasion to discuss and apply the legal principles involved at a later stage in the progress of the case. For the present, however, we content ourselves with the formal ruling, which we now make, that the findings of the referee be and are approved, and the order made by him is affirmed, with the modification that the bankrupt shall have 30 days from May 25, 1914, in which to comply with the order.